**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

STEPHANIE BALL, an individual,

    Plaintiff,

v.

OP4G, INC., A Delaware limited liability company,

    Defendant.

_____

**COMPLAINT WITH REQUEST FOR JURY TRIAL**
_____

COMES NOW, the Plaintiff, Stephanie Ball, by and through her attorney, Thomas H. Mitchiner, Mitchiner Law, LLC, and submits her Complaint and Request for Jury Trial against Defendant, Op4G, Inc.

### Nature of the Case

This is an employment discrimination case arising from the discriminatory treatment of Stephanie Ball [Ball] a White female over forty years old, by her employer, Op4G, Inc. [Op4G]. The discriminatory practices, based on Ball's age, include, but are not limited to discriminating against Ball concerning the terms and conditions of her employment, the benefits of her employment, and terminating her. Ball also asserts a retaliation claim against Op4G.

The discriminatory and retaliatory actions violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. al.* [ADEA]

1

## Jurisdiction and Venue

1. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331.

2. This is an action authorized and instituted pursuant to the ADEA.

3. The claims in issue arose in the City and County of Denver, State of Colorado.

4. All claims arose in the Judicial District of this Court. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (c).

## Parties

5. Plaintiff, Stephanie Ball [Ball], a White female over the age of forty, is a resident of the State of Colorado.

6. Ball has been in sales for the past twenty plus years, seven of which have been in the market research industry.

7. Defendant, Op4G, Inc. [OP4G], is a Delaware limited liability company with its principal offices in New Hampshire registered with the Colorado Secretary of State to do business in Colorado.

8. Op4G is a global online market research panel built to support data collections while simultaneously benefitting non-profits.

9. Ball is an employee under the ADEA.

10. Op4G is an employer under the ADEA.

## Background

11. Op4G offered Ball a position on December 27, 2019.

12. Op4G Vice President of Sales, Ryan Stoudt [Stoudt] interviewed and made the decision to hire Ball.

13. At the time of her hiring Stoudt informed Ball of an initial 90-day probation period.

14. Stoudt stated that all Ball needed to do to move past the probation period was to make at least one sale.

15. Op4G's employee handbook mentions the probationary period but does not provide employees with information they need to ensure they pass the probationary period.

16. Stoudt did not mention during the hiring process that Op4G would require Ball to hit a specific revenue number in Q1 of 2020, in order to complete the probationary period, and to retain her employment with Op4G.

17. Op4G hired Ball to work as Senior Director of Client Development.

18. As a Senior Director of Client Development Ball sold quantitative online survey panels and services to market research firms, was responsible for receiving specifications and running feasibility on the panel, and responsible for new relationship development with clients and maintaining relationships with clients among other duties.

19. Op4G compensated Ball by paying her a salary of approximately $85,000.00 per year, plus commissions.

20. In addition, to the salary and commission Op4G offered other benefits to Ball

such as health insurance.

21. At the time of her hiring Op4G presented Ball with an offer letter.

22. In the letter Op4G stated that it would pay for 70% of individual health insurance premiums for all employees.

23. In addition, to the offer letter Op4G's employee handbook also contained this same information and Ball received an on-boarding email that relayed the same information to her regarding health insurance.

24. None of the documents provided to Ball regarding the health insurance stated that Op4G could change the plan because of an employee's age.

25. On or about January 12, 2020 Ball began working for Op4G in its Dallas, TX office.

26. Ball was based out of Dallas but performed a majority of her work in the State of Colorado.

27. On February 6, 2020, the Chief Executive Officer of Op4G, Frank Nappo [Nappo], emailed Ball informing her that because of her age Op4G would not provide her with the health insurance benefits outlined in the offer letter, the employee handbook and the on-boarding email sent to Ball.

28. Nappo informed Ball that due to her age her health insurance premium for each month would cost $1,098.13.

29. Op4G would expect her to pay $706.00 of the costs and Op4G would pay the remainder.

30. Op4G essentially reversed the plan previously outlined to Ball and required her to pay nearly 70% of her health insurance premiums.

31. Op4G provided the plan as outlined in the employee handbook and Ball's offer letter to individuals not of her protected status.

32. Employees not of Ball's protected status only paid 30% of their health insurance premiums. For example, if their health insurance costs $1,098.13, the employee would pay $329.44 and Op4G would pay $768.69.

33. If Op4G had provided Ball the plan outlined to her she would only have had to pay $329.44 per month.

34. On February 11th Ball traveled to Dallas for additional training.

35. During this visit she voiced her displeasure in person to Stoudt about being denied the healthcare benefits that Op4G had outlined to her in the offer letter, the employee handbook and the on-boarding email.

36. Ball on her own found cheaper health insurance and asked Nappo if Op4G would reimburse her, in the exact same manner and amount as it does for other employees, if she purchased this insurance on her own.

37. Nappo stated that Op4G would not do this because it would be too expensive.

38. On or about April 1, 2020, Stoudt called and then emailed Ball to inform her that she had only generated $12,000.00 of her $90,000.00 quota for Q1.

39. This was the first time Ball had heard that Op4G required her to generate $90,000.00 for Q1.

40. This information was not provided to Ball during her interview or during her on-boarding process, or in any other documents.

41. Further, the email stated that in Q2 Ball would have to generate at least 70% of the $85,000.00 quota to avoid being put on a performance improvement plan.

42. Ball was not worried about achieving the Q2 quota as she had approximately $130,000.00 in her pipeline.

43. Op4G did not bring the quota up to Ball until after she had worked for it for a few months and not until after she complained about not being offered the same health insurance benefits as her colleagues.

44. Despite this, on April 10, 2020 about nine days after they first presented Ball with the quota, and even though Ball had made at least one sale, Stoudt and Nappo terminated Ball, allegedly for "not successfully meeting set expectations during the 90-day probationary period."

## First Claim for Relief
(Age Discrimination –Benefits – 29 U.S.C. § 623)

45. The foregoing allegations are realleged and incorporated by reference.

46. At all times in issue, Ball performed her duties in a satisfactory manner.

47. At all times in issue, Ball did not engage in any conduct warranting the discriminatory adverse actions described herein.

48. OP4G discriminated against Ball because of her age by intentionally depriving Ball of her right to be free from age discrimination in the performance, enjoyment,

continuation, rights, benefits, and privileges of her employment relationship with the Op4G, in violation of 29 U.S.C. § 623(a)(1), (2).

49. The ADEA applies to employee benefit plans.

50. Op4G discriminated against Ball because of her age: (a) with respect to her compensation, terms, conditions, or privileges of employment; and/or (b) by limiting, segregating, or classifying Ball in a way, which deprived, or tended to deprive, Ball of employment opportunities, or otherwise adversely affect her status as an employee.

51. Op4G engaged in continual, increasing, and intentional age discrimination in taking adverse unlawful employment practices against Ball because of her age.

52. Specifically, Op4G did not provide Ball with the same health insurance benefits that it provided employees not of Ball's protected status.

53. Op4G's health plan was not a "bona fide" plan as defined by the ADEA and regulations. 29 U.S.C. § 623(f)(2)(B).

54. Op4G's plan is not accurately described in writing and Op4G did not provide benefits in accordance with the terms of the plan. 29 C.F.R. § 1625.10(b).

55. Op4G treated Ball differently than similarly situated because of her age with respect to health insurance benefits.

56. Op4G acted willfully, with malice or reckless indifference to the rights of Ball.

57. As a result of Op4G's actions Ball suffered damages in an amount to be proved at trial.

## Second Claim for Relief
(Retaliation – 29 U.S.C. § 623(d))

58. The foregoing allegations are realleged and incorporated by reference.

59. When Op4G hired Ball, it told her she would receive certain health insurance benefits.

60. After Ball begin working for Op4G, Op4G informed Ball that it could not offer her the same health insurance benefits as it offered other employees because of Ball's age.

61. Ball told Stoudt that Op4G's failure to provide her with the outlined health insurance benefits because of her age was discriminatory.

62. Ball on her own found cheaper health insurance and asked Nappo if Op4G would reimburse her, in the exact same manner and amount as it does for other employees, if she purchased this insurance on her own.

63. Nappo stated that Op4G would not do this because it would be too expensive.

64. Ball asked that Op4G provide her with the same benefits as her coworkers regardless of her age and Op4G refused to provide her with the benefits.

65. Shortly after Ball made the complaint to Stoudt, Stoudt for the first time informed her of a quota she needed to meet in order to retain her position with Op4G.

66. On April 10, 2020 without giving Ball a chance to hit the quota Op4G terminated her.

67. Op4G terminated Ball even though Ball had made at least one sale, which Stoudt had told her was all she needed to do in order to retain her position.

68. Op4G terminated Ball in retaliation for her opposition to its discriminatory practices in violation of 29 U.S.C. § 623(d).

69. A casual connection exists between Ball's complaints, the new metrics and her termination.

70. A reasonable employee would have considered Ball's termination for complaining about not receiving the same benefits as younger workers as being materially adverse.

71. As such, Op4G acted willfully, with malice or reckless indifference to the rights of Ball.

72. As a result of Op4G's actions Ball suffered damages in an amount to be proved at trial.

### **Request for Relief**

WHEREFORE, Plaintiffs, Stephanie Ball, respectfully prays for a judgment to be entered against Op4G, Inc. as follows:

A. Against Op4G, Inc. for back pay, loss of benefits, and all economic benefits associated with Ball's employment, under 29, U.S.C. § 621 et. al., as allowed by law;

B. Against Op4G, Inc. for front pay under 29, U.S.C. § 621 et. al., as allowed by law;

C. A finding that Op4G, Inc., willfully violated 29 U.S.C. § 621 et. al. and for liquidated damages available to Ball, under 29, U.S.C. § 621 et. al., as allowed by law;

D. Against Op4G, Inc. for attorney fees and costs available to Ball, under 29, U.S.C. § 621 et. al., as allowed by law;

E. To award Ball all other legal and equitable relief, to which Ball is entitled

pursuant to any law, that this Court deems just, equitable, and proper.

## JURY TRIAL REQUEST

Pursuant to Fed. R. Civ. P. 38 (a) (b) (c), and 29 U.S.C. § 626(c)(2), and all applicable laws providing for a right to trial by jury, Ball seeks a jury trial of all claims and issues in this action.

Respectfully submitted on 22 December 2020 by:

Mitchiner Law, LLC

/s/ Thomas H. Mitchiner
Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St., Ste 200
Denver, CO 80203
Phone: 720-538-0371
E-mail: tmitchiner@mitchinerlawllc.com

Attorney for Plaintiff Stephanie Ball

Address of Plaintiff:

6686 Green River Dr. Unit D, Highlands Ranch, CO 80130